***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Phillip Holmes, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 26 June 2001 as:
 STIPULATIONS
1. The Employee is Paula Fox.
2. The Employer is Wal-Mart Stores, Inc.
3. The Carrier at risk is American Home Assurance Co.
4. At all relevant times, Defendant-Employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer and the employee relationship existed between the employer and the employee on or about July 7, 2000, the date of the alleged injury by accident.
5. The average weekly wage is $193.00, per the Form 22.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the alleged injury, plaintiff was employed as a stocker at Wal-Mart and had been working there since May 9, 2000. Prior to that time, she had worked at Lowes Foods as a deli clerk. Her duties there included slicing meat and cheese, making sandwiches, cleaning the department and serving customers.
2. Plaintiff's duties as a stocker at Wal-Mart included placing items on the shelves from boxes. The boxes full of products would initially be located on a pallet in the aisle on which the items needed to be stocked. During plaintiff's employment, another employee would move the items from the pallet to a floater, which is basically a hand truck with four wheels. The other employee would pull the hand truck to the location on the aisle where the products needed to be unloaded. Plaintiff would then place the products on the shelves.
3. Plaintiff also zoned each aisle, which consisted of straightening each aisle and pulling the products forward on the shelves so that the shelves looked full.
4. Plaintiff performed computer-based learning approximately 1 1/2 hours at the beginning of her shift and 1 1/2 hours at the end of her shift. The computer learning required her to hit a key on the computer to scroll down or respond to a question and/or use a mouse. It did not require a lot of typing.
5. During the first several weeks of her employment, plaintiff's time was split between stocking shelves, zoning and completing her computer-based learning.
6. Starting very early in her employment with Wal-Mart, plaintiff wore wrist and elbow braces on each arm, allegedly because of some tingling in her middle finger.
7. On July 7, 2000, while lifting a box of salsa, which contained twelve 16-oz. jars and weighed approximately twelve pounds, plaintiff felt something pop in her right arm. Plaintiff admitted that she was doing her regular job, and was performing it in the same manner as always.
8. Plaintiff reported this event to Mr. Snider, her supervisor. Initially, she indicated that she did not want medical treatment; however, after her lunch break her hand was cold and began hurting, at which point she told Mr. Snider that she did want to go to the emergency room.
9. Plaintiff went to the Randolph Hospital Emergency Room and reported that she hurt her elbow while lifting a box of sauce. She denied any numbness or tingling in her fingers. She was diagnosed with a right elbow sprain and referred to Dr. Walha, who was her family physician, for future treatment.
10. Plaintiff saw Dr. Walha on July 11, 2001 and once again reported that she had hurt her elbow while lifting some boxes at work. Dr. Walha diagnosed plaintiff as having right lateral epicondylitis, which is tendonitis of the extensor tendons at the elbow. She advised plaintiff to do light duty work with limits on repetitive motion.
11. Plaintiff returned to Dr. Walha on July 15, 2001 with continued complaints of elbow pain. Dr. Walha allowed plaintiff to continue working light duty with no lifting over five pounds and no repetitive motion. On August 3, 2000, plaintiff returned to Dr. Walha with the same complaints and Dr. Walha continued her restrictions.
12. At no time has plaintiff described anything unusual occurring while she lifted the box of salsa. Instead, she admitted that she had lifted many boxes of comparable size and weight during her employment as a stocker with Wal-Mart. Plaintiff was doing her regular job in the normal manner when she was hurt on July 7, 2000.
13. Plaintiff's supervisor, Mr. Snider, testified that plaintiff's production performance was poor throughout her employment and that she would very often wander off to different parts of the store to talk with other co-employees. On one occasion, he "coached" her on a written so-called "coaching" form indicating that her production needed to improve. The Commission understands "coaching" to be a euphemism for discipline.
14. A normal employee is responsible for unloading fifty cases per hour. However, on the night that she was coached, plaintiff had stocked only twenty cases for the entire six-hour shift. Typically, the boxes weighed no more than thirty-five pounds with an average of twelve pounds.
15. Ms. Smith was plaintiff's supervisor when she returned to work after the alleged incident. Plaintiff was assigned to the health, beauty aids and cosmetics department to do zoning work. No lifting was associated with this position. Plaintiff's duties were simply pulling cosmetics and beauty aids forward onto the shelves to zone them. Even in this department, her production problems continued in that she was unable to meet production requirements and she continued to wander around the store speaking with other co-employees when she should have been working.
16. Plaintiff was moved to the soft lines (clothing) department to pick up garments from the floor and hang them up, another form of zoning. She was instructed never to lift more than two pounds. Her production and wandering problems continued and her employment was terminated on August 7, 2000 due to her low productivity.
17. Thereafter, plaintiff was hired at Check and Go on September 15, 2000 and began working there on September 20, 2000 earning more than she was making at Wal-Mart.
18. Plaintiff received unemployment benefits for most of August and half of September. The first check she received was between $94.00 — $97.00, while each following check was for $47.00 per week.
19. On July 16, 2001, plaintiff returned to Dr. Walha complaining of her right arm feeling tired and some tingling in her index and middle fingers, which are the same complaints she had prior to July 7, 2000. She admitted to Dr. Walha that doing housework increased some of her pain. Dr. Walha stated that plaintiff was under a lot of stress due to problems at home. Dr. Walha offered to give plaintiff an injection in her elbow to help the tendonitis calm down, but plaintiff wanted to wait.
20. Dr. Walha was under the mistaken impression that plaintiff's work at Wal-Mart required repetitive motion and that all jobs at Wal-Mart required repetitive motion, which is not correct.
21. Dr. Walha was the only expert to testify in this case and when asked whether plaintiff's employment caused her condition, Dr. Walha could not say to a reasonable degree of medical certainty that it had. Instead she answered, "I cannot rule that out, just like anything else."
22. Dr. Walha testified that plaintiff's zoning work would not cause plaintiff's condition unless she was constantly turning the cans without a break. Plaintiff took numerous breaks during her shift and was repeatedly found wandering off from her assigned area to different areas of the store talking with other employees, instead of doing her job. This contributed to her low productivity and is the reason her position at Wal-Mart was terminated. Thus, the zoning work did not cause plaintiff's tendonitis.
23. Dr. Walha testified that there are many possible causes of plaintiff's condition other than her employment at Wal-Mart, including doing household chores, playing tennis, working in the garden, and moving furniture.
24. At the hearing, plaintiff testified that currently she only takes Aleve for her arm and that she is basically symptom-free.
25. Plaintiff's employment at Wal-Mart did not significantly contribute to the development of tendonitis in her elbow and did not expose her to a greater risk of contracting tendonitis than the general public.
26. The undersigned finds that plaintiff did not sustain an injury by accident, nor did she suffer the onset of a compensable occupational disease on July 7, 2000.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
Plaintiff has failed to prove by the greater weight of the evidence that she sustained a compensable injury by accident or an occupational disease as a result of her job duties with defendant-employer. N.C.G.S. §§ 97-2(6), 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall bear their own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER